We'll hear argument first this morning in Case 09-530, National Aeronautics and Space Administration v. Nelson. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. Background checks are a standard way of doing business. The government has required them for all civil service employees since 1953 and for contractors since 2005. Yet the Ninth Circuit in this case held that a constitutional right to informational privacy precluded asking the questions it asked. That was wrong for two basic reasons. First, the background check's mere collection of information with accompanying safeguards vitiates no constitutional privacy interest. These checks have been going on for millions of employees for dozens of years. They are part of the employment process. They are manifestly not roving checks on random individuals. And second of all, is there any limit to what questions the government can ask an applicant? Well, the limits are, in this case, are the ones on SF-85 and Form 42. And we do think that that's a fairly strict What does that mean? Well, those two Could you ask somebody, what's your genetic makeup? Because we don't want people with a gene that's predisposed to cancer, whatever, other. Could you ask that? Well, I think that the Court doesn't need to confront that fairly We do, because I have to start with the question of what are the limits on the government, if any? Are you taking the position that as an employer there are absolutely none, or are you taking the position that there are some, and what would they be? Our position is in a case such as this where there are collections on the government's dissemination of the information. So what you're saying is there's no limit. I think that this Court in Wayland, there's no decision thus far that has recognized any constitutional limit on the government's collection of information, so long as they're accompanying safeguards on the dissemination of that information. General, why are we getting into this? Because this case, it seems to me, is a challenge, your challenge, to a preliminary injunction, which was quite narrow. There was only one question at issue. There's no cross-appeal, is there? There's no cross-appeal. So we have Form 85. The only thing that's in contention there is the question about treatment or counseling, nothing else. So why are we talking about the universe of what questions might be asked? And on the other form, I take it it's just the so-called open-ended questions, not everything on the form. I quite agree, Justice Ginsburg. That's what I was trying to say to Justice Sotomayor. That is, I think that this case doesn't force the Court to answer questions it has never really answered, which are the outer limits of what the government can do in terms of the collection of information. Here you have a narrow decision by the Ninth Circuit, one whose reasoning, I think, could radiate very broadly and undermine the government's background to that. Ginsburg. So what do you think has been the hasn't been a formal injunction, preliminary injunction, has there? It's only at the preliminary injunction stage, but our point is that the reasoning that the Ninth Circuit used, if adopted, if adopted to create a permanent injunction, could preclude the government from asking all sorts of questions in background checks, not just the ones that are isolated here, but more general ones, because the Ninth Circuit decision is essentially a how-to manual and how to question various individual questions and micromanage them and inject Federal coercion. Ginsburg. I thought that the entire Form 85 was approved. There's no questions you can ask about have you used drugs within the last year. It's only the question about treatment and counseling that is at issue, right? That's all that the Ninth Circuit ruled on at the preliminary injunction stage. Roberts Does their ruling stop you from asking that question right now throughout the Ninth Circuit? Which question, the drug treatment question? No, no, no, yes, yes, the counseling and treatment question. Well, there's a the mandate has been stayed, so we haven't been able to. But if we sustain, if we sustain the preliminary injunction, the government can't ask that question throughout the reach of the Ninth Circuit. That's exactly correct. And if we did so, it would be because there's an underlying privacy right that's somewhat ill-defined or undefined. Exactly, Justice Kennedy. And if this Court were to embrace that reasoning, and this is my answer to you, Justice Ginsburg, as well, that it doesn't just reach drug treatment. I could imagine other litigants doing it for other forms of questions, whatever they may be. But the circuit precedent, as far as the other questions on Form 85, the circuit said that's okay. It's permissible to ask those questions. Thus far, that's correct. But I can imagine other litigants coming in, and maybe not just with respect to these questions, but questions on SF-85P or Form 86, any number of other things. What is the well-defined, the well-defined constitutional right to institutional or to informational privacy that the government is willing to acknowledge? You apparently don't challenge the existence of such a constitutional right. Justice Scalia, our position is that the Court doesn't need to answer that question. It's just like Wayland, because in Wayland, this Court assumed the existence of some sort of constitutional right, and then said, is that right violated here? And our point of view is that if there were a constitutional right, would it cover this? Can we do that? I agree in many other contexts it might not be appropriate, but here, I think there are some good reasons why. I mean, this Court has had special reticence to rule broadly in the range of privacy. And I think the reason is privacy is something that is in flux in ways that other things aren't, both in terms of our social understandings, technology, and legislation itself. And for that reason, I think this Court has spoken narrowly whenever it's dealt with the rights of the people. Scalia, it wouldn't justify not defining it broadly or narrowly. It wouldn't justify not reaching the question of whether there is any such constitutional right at all. Justice Scalia, that's what this Court has done throughout its history. Wayland was a unanimous decision, and Nixon, on that particular question, I don't think there was disagreement about. So how could you say that? The right is not violated here without having some idea about either the existence or the contours of the right. Well, I think it would just be like in Wayland itself. So in Wayland, the Court said there may be some right to informational privacy, but so long as there are safeguards on the disclosure, the government's dissemination of the information, that means that there is no.  So the question is, does the government have the right to disseminate information from private individuals so long as the information is not publicly disseminated? No, that's not our position. Our position here is that the government can collect information so long it is not disseminated in the employment context. In this case, unlike Wayland, is one that has that added fact to it, that the government here is asking. Kennedy, well, does it help us in finding what this residual background right is in asking you, why is it that you can't disclose it? Why can't you disseminate the information? Sure. We're restricted by statute. The privacy of the statute.  If you assume that the privacy of the statute is not disclosed, then you can't disclose it. In other words, this is just testing whether there is some background constitutional right and how to define it if we have to use that as a beginning premise. Absolutely. If we took out all of the safeguards that are at issue here, then the case wouldn't be like Wayland or Nixon in which you had those – in which you had safeguards on the dissemination. And then you would have to confront the question, which we think you shouldn't confront in this case, for the reasons I said to Justice Scalia. And what would be your position if the – all of this information were disclosed? Or that there was an attempt to disclose all the information and they asked you for your advice on a constitutional basis? Right. I mean, our position is that the Court really shouldn't, for all of the reasons I said, get into it. But if the Court had to get into it and ask, is there some constitutional right that would be violated, Justice Kennedy, by your hypothetical, our answer would be no. But we do think the way that this has traditionally been handled is legislation. Safeguards and political rights. Roberts, so when you say your position would be no, you mean that there is no right of any kind under your – I know you don't want us to reach it, but you would say there's no right of any kind for a citizen to tell the government that that's none of your business? The government will decide that it can ask anything of a citizen so long as you don't disclose it. In the employment proprietor context, okay? So if the Court had to confront that question, it would apply the matrix that Justice Scalia has talked about, the Glucksberg matrix, of whether a right, the right is firmly rooted in the traditions of the people, and ask, is the government's collection in it? Roberts, do you think it's firmly rooted in our traditions that there is some right to tell the government that's none of your business? I think that there is some right. The question about whether it employs in the unique employment proprietor context is one the Court hasn't confronted, and our strong position here is the Court shouldn't confront it. Alito, what is the test for determining what sort of questions can be asked in the employment context? Is there any limit? Suppose the government says, well, we want to know all about your diet, we want to know whether you smoke cigarettes, we want to know everything you read, we want to know what your hobbies are, what forms of entertainment you enjoy, sexual practices, every aspect of your private life, just because that gives us a better picture of who you are as an employee. Is that okay? Sure. No. There are limits, and I should have said this earlier, that if the government's collection of information or the disclosure of the information burdens some other fundamental constitutional right, that is certainly one limit. So if the government were collecting information, Justice Alito, on sexual practices of its employees, it may burden the exercise of other rights. Yes, but that's putting those aside. I mean, what about some of the hypotheticals Justice Alito posed, your diet? Right. So it's certainly relevant in the employment context, right? They're going to have to pay for your health care, worry that you might miss things, miss days of work. So I guess the point is, do you think the government's right to inquire in the employment context is exactly as broad as a private employer's right? I do think that if the private employer, the private employers are a good template for, if the government is simply mirroring what private employers do, as Justice Scalia said in O'Connor v. Ortega, that's a good suggestion that what it's doing is reasonable. Now, to the extent, Justice Alito, that they are gradiating far beyond what private employers do in terms of asking about eating habits and the like, I do think that that may pose, that there may be some limits. The Court doesn't need to confront that here. It simply needs to look at the Ninth Circuit's decision, which recognized a broad freestanding right against informational collection of its employees, to make sure and realize that that is a serious problem for the way the government does business. Scalia. We do have a legislature, don't we, that can place some limits on what the government asks employees or anybody else? Katyal. Absolutely. Scalia. It's the same legislature that prohibited the government from disclosing a lot of information, isn't it? Katyal. That's precisely correct. And it's possible that that's the protection that the Framers envisioned, rather than having courts ride herd on government inquiries. It's certainly possible, Justice Scalia. I think that all of these hypotheticals are enormously interesting, but the particular forms. Excuse me? Were these two forms approved by Congress? The forms themselves were not approved by Congress, but the Privacy Act, which is the main restriction. Sotomayor, that's a restriction on disclosure, but the same Congress can change that, correct? That's absolutely correct. Now, the Privacy Act has been around since 1975, and the government has collected you know, it's been used millions of times, SF-85. It's been used 553,000 times in the last 4 years, and we have not seen the types of disclosure or complaints that I think animate the worry that my friends on the other side are saying. Roberts What is the reason, I've had trouble putting my finger on it, that you need the information about counseling? You already have the information, have you used drugs in the past year? I couldn't tell if you thought the question about counseling was for the good of the employee, oh, you're taking steps to, or was it to allow you to show, well, it must be serious because you need counseling. It is for the good of the employee, so it's a problem. Whenever the government comes and says, this is for your own good, you have to be a little suspicious. I mean, if it's the employee gets to expand upon his or her answer, they say, tell us about it, and they can say, well, don't worry, I'm in counseling or treatment, and even then that doesn't sound like it's for their good. It's one thing to say I had a drink. It's another thing to say I'm in AA. Katyal, Mr. Chief Justice, the way the question is framed is first they are asked, have you used illegal drugs in the last year, and then if the answer is yes, provide details, and then indicate any treatment or counseling received. Now, I had a question about the way it's worded. It says, if you've used it in the last year, detail your involvement with drugs and any counseling you received. Do you understand the counseling question to be limited to the past year or to reach back as far as? I think that the question itself is vague. Now, the way that the Office of Personnel Management will process such a form is it will process anything so long as there is information about just drug use. But do you think it's required? I mean, you do sign at the end. This is true to the best. Do you think it's required to disclose counseling and treatment you received more than a year back? No. This is unlike, for example, SF-86, which does ask for treatment and counseling back up to, I think, a 7-year period. So I think this is a much more narrow inquiry. And I think the reason for that inquiry is to help the employee. The government background to this is that it's obvious it was raised by the other side. It was if it's for the good of the employee, make it voluntary. Well, Justice Ginsburg, I think that's the type of inquiry that this Court rejected in Wayland. Because in Wayland, the whole debate in the court, in the district court below, was, well, if you want to stop Dr. Prescription Mills, people from writing too many narcotics, you don't need the names and ages of the patients. We could change the triplicate forms and redact that. But what this Court said on the second page of its opinion was it called that or suggesting random different, you know, a few different words here or there. And here, experts put this form together to try and get at, basically, are you using drugs and are you using treatment, which might ameliorate the fact that you had used illegal drugs in the last year. Alito, I had thought before the argument that one of the purposes for asking about treatment was to identify employees who may have undergone treatment on numerous occasions and dropped out of programs and been unsuccessful, so as to identify chronic drug abusers. But I guess in light of what you've just said, that this only reaches back one year, that is not a purpose of this. That is correct. And in preparation for this, we did survey all of the NASA different centers to ask, has treatment ever been used in any sort of way to hurt an employee? And the answer that came back was no, it hasn't been used. It is only used to help. It is used to retain someone who did use illegal drugs, but is taking steps to mitigate the impact. Roberts. How do you know that? I mean, you ask a lot of questions on these forms and they just say, well, we're not going to hire you. How can you go back and say it was because you put in, you know, in treatment for drug abuse? Well, the process by which this takes place is the form is filled out. It is ultimately sent to an adjudicator if there is negative information. And that information is then discussed with the candidate for employment or the employee to see if they have an explanation. And of the times that this has happened that someone has been denied, and I think the number is 128 times over the last 5 years, none have been denied for a positive answer to drug treatment. Over the last 5 years, this has only come into play 128 times across the Federal bureaucracy? For Federal contractors, that is correct. Yes, yes. Sotomayor, I'm sorry, I'm not sure I understand the answer. Only 128 times has somebody identified themselves as a drug user? 128 times the SF-85 process, as my understanding, has been used to deny someone a credential of the Federal contractors. So it could be for any other answers as well? For anything, exactly. And about, I think there have been about 74,000 contractors that have sought badges through the SF-85. Are you representing to us that every employee who is rejected will know the reason? That is correct. That is part of the regulations that are in place. So that if someone is denied a credential, and this is, I think, at Joint Appendix page 180, they are told the reason for that denial, they are given an opportunity to explain themselves, and a process is then put in place. There is then also robust appeal and other things that may happen as well. But one thing that doesn't happen, Justice Sotomayor, is that JPL, the contractor, is not told the basis for why the person is denied a credential, that it is private as between the government here at NASA and the individual employee. And that is the reason. So where did the suitability matrix come in? It doesn't. It doesn't. It doesn't. And NASA has never used it. You are representing that to the Court? I'm representing that NASA has never had, NASA will not and does not use this employee suitability chart to make contractor credentialing decisions. Where did it come from? Well, it's a, it's a, it's been hard to actually pin down where it came from. I think it is derived from earlier Office of Personnel Management materials at a time when, that listed out what various crimes were. And so some of those things that are on there that are quite salacious are things that OPM at earlier points in time looked to not for contractors, but for government employees. But I can represent to the Court that NASA does not and will not use this chart for credentialing decisions. Ginsburg. Do you, do you have a clear idea of how the Form 42 would have to be amended if the Respondents are correct? Form 85, we know, we excise counseling or treatment. What in the Form 85 did the Ninth Circuit say? It said open-ended questions, but I looked at the form and it's not clear to me which ones are considered open-ended. Justice Ginsburg, I quite agree with you. I don't think that the Ninth Circuit's reasoning is capable of being ameliorated easily. So we talked before about how the drug treatment was just a narrow part of the Ninth Circuit decision. But this Form 42, the invalidation of Form 42 goes to the heart of what the government does all the time and what all employers do. They ask open-ended questions to figure out whether someone is trustworthy and reliable. I think as Judge Kleinfeld said, that's how law clerks are hired, that's how baristas at Starbucks are hired. You have to ask these open-ended questions, because as an employer, you don't really know what, where the pressure points or danger spots in an individual application are. Sotomayor, is your position today that our ruling should say that the government is free to ask, as a private employer or a contractor, it is free to ask any question it wants whatsoever? That is not what we're saying. We've started with that. We're not saying that. Then what's the narrow ruling? That's what I thought I heard at the beginning of our colloquy today. Justice Sotomayor, the narrow rule is what we said in our petition and what we said on the very last page of our reply brief and all throughout, which is this Court should simply say what it said in Wayland, which is, assuming that there is some sort of right to informational privacy, the use of a background check with accompanying safeguards to collect information doesn't violate a constitutional right. Sotomayor, why wouldn't that violate it if the question involved a fundamental right? If you were asking the question that Justice Alito asked, which is what's your sexual practices in the bedroom, if there are security checks against you disposing of it, you're saying even that would be okay? I could imagine a circumstance far afield from this one in which the government's just mere collection of information about sexual practices might burden the exercise of those rights. I'm saying it's not at all present here, and I don't think the Court should get into it. But that's a really different question than the one here, which is, is there some freestanding right to constitutional privacy that is unburdened by the fact that there are protections against the disclosure of information? Here, the Privacy Act imposes strong protections against the disclosure of information, and so what's left is a very residual interest in the part of the imposition. Sotomayor, this is a bit unsatisfying, because you start by saying to us, as long as there are some nondisclosure protections, then virtually any question, whether it impinges a fundamental right or not, would be okay, because there's a – I don't even know what the government's interest is in asking every question it wants to. There has to be a need for a set of questions, doesn't there? Well, I could imagine an as-applied challenge to, for example, you know, the hypothetical about sexual practices or whatever. I do think, as Justice Scalia said, the real check on that is the political process check. The fact is the government doesn't ask those kinds of questions, and to the extent it ever did, the Court could confront that in an as-applied challenge. I still don't see why that wide universe is before us, because the Ninth Circuit said some of this form is okay. Most of Form 85 is okay, and some of Form 42 is okay. I thought it was only the questions under 7 and 8, the open-ended questions. I didn't think the Ninth Circuit had enjoined anything other than those questions. Those questions, Justice Ginsburg, are really the heart of the form. I mean, those are the – in many ways the most important questions, because they're the ones that employers have to ask because they don't know the weaknesses in an individual applicant's background. There are a number of statements in, I guess, the concurrence from the denial of in-bank explaining how JPL is fairly open, and it is close to Pasadena. The Court has Pasadena residents and judges visit JPL often. Are there any statements of fact that you disagree with and that are not in the record other than the matrix question? Leave that aside. Well, yes. I mean, I would say a few things. Number one is I think that the concurring judge that did, I think, underestimate how important security is there. First of all, there are armed guards when you're coming in. It is not the campus-like atmosphere. It's not like a campus I'm familiar with that she described. The information at the Bay, at JPL, is sensitive, quite sensitive, both, you know, in terms of scientifically and with respect to our nation's secrets. And I think the more important point about this is the badge that the plaintiffs are going to give access to JPL, it will also give them access to all other NASA facilities. And it's such an important credential that it would allow them to get within, for example, 6 to 10 feet of the space shuttle as it's being repaired and readied for launch. So this is a credential not just for JPL and getting onto JPL, but other places as well, if I could reserve the balance of my time. Thank you, General. Mr. Stormer. Mr. Chief Justice, and may it please the Court. The issue as now characterized is really how far may a government go, may this government go, to intrude into the private lives of its citizens for positions that do not involve sensitive issues, classified issues, national security issues, or positions of public trust? Mr. Stormer, what provision of the Constitution are you relying on? I looked at your table of authorities in your brief, and you have cases listed, you have statutes listed. There's not a single citation anywhere in your brief to a provision of the Constitution. What provision of the Constitution are you relying on? It would mostly fall to the government. I think it's a very nice thing that the government shouldn't ask intrusive questions. I also think it's a nice thing that the government should pay a living wage to its employees. But I don't feel authorized to go around saying how much the government should pay each of its employees, because there's nothing in the Constitution about that, and the question is left to Congress. What do you rely on in the Constitution that enables me to decide how much intrusiveness is too much, rather than leaving that to Congress? It would flow from the ordered concept of liberty component of the Fifth Amendment as well as the First Amendment. Scalia The Fifth Amendment, which says no person shall be deprived of what? Of life or no person shall be deprived without due process of law, and then the last component of this refers to the concept of ordered concept of liberty. That's what I thought. You're talking substantive due process here. The Whelan cases, the Nixon case, and to some extent the Reporters Committee case refer to this concept of privacy. And they are, in fact, vague, but they do talk about the concept of privacy as being the right to control information about oneself. And both and all of those. Scalia I don't like that, but I just don't see it anywhere in the Constitution. That's all I'm talking about. Scalia Those cases, in fact, do not refer to a term called informational privacy. Those terms have grown from the various cases that have flown, flowed from the determinations in Whelan and Nixon and to some extent Reporters Committee. Sotomayor So that right is subject to what level of scrutiny? Is it always strict scrutiny? And how do you square Whelan and Nixon's balancing with strict scrutiny? Scalia The standard would be, I think the appropriate standard was applied by the Ninth Circuit, which is a legitimate State interest narrowly tailored to meet that need. In this case, there is some, like the Von Raab case, which is not cited in our briefs, but which was a Fourth Amendment case, the this Court used a compelling State interest standard for a Fourth Amendment invasion. And in that case, the Court remanded on the issue of whether or not the positions involved classified or sensitive materials. Breyer So what is your view of what the liberty? You are saying that the words in the Constitution that protect the right that you can't be, I guess, deprived of life, liberty, or property without due process of law. I guess you mean the word liberty. Scalia That's correct. Breyer All right. And in your words, it is liberty, define it, liberty to what? Scalia Liberty to control information about oneself. Liberty without intrusion. Breyer It is the right liberty to control information about oneself. Scalia Without governmental intrusion. Breyer All right. And all information, some information? There is a liberty to control all information, protected from what? From the State? The State doesn't have a right to give you any, get any information about you, want a driver's license? When does it come into play? Breyer It comes into play when the government, the State, seeks to intrude and obtain information from an individual. The, the, the, the State has to. Breyer So, in fact, if the government says, I go in, I want my driver's license, and they say, fill out the form, we want to see how you, whether you can drive or not, that, that potentially could violate the Constitution. Scalia Well. Breyer Potentially. It might not, because it may be justified. But each such case would have to be justified. Is that, is that your theory? Scalia Any intrusion into private lives would have to have some. Breyer No, it says liberty. The liberty you said was liberty to control information about yourself. Scalia That would. Breyer And you would want to know how that works. Every time anyone in the government asks a question about you personally, of course, it wouldn't be unconstitutional, but it, but every time it would have to be a justified thing. Is that, is that your theory? I'm just asking. Scalia That's, yes, it is. Sotomayor So that's all information about yourself? I think what Justice Breyer is getting to, and that I'm trying to figure out, is you've used the word privacy. What does privacy relate to? Breyer Privacy relates in this case to. Sotomayor But I'm talking about, answer his broad question, which is you've defined the constitutional right to information about yourself. Breyer Correct. Sotomayor Is that all information about yourself, including your date of birth, your Social Security number, your, where you live, where you've gone to school, who your friends, who your references are? Because as broadly as you've defined that, it would include all of that. Breyer The, the nature of what is included can be intruded upon, based upon governmental needs. So if there's a rational basis for knowing Social Security numbers, driver's license, census information, that type of information, then there's not an issue. Roberts So this gets back to Justice Sotomayor's earlier question. You just said if there's a rational basis. So is that the test? Breyer The test is no matter what type of information. I suppose it's harder to show a rational basis when you get into certain areas that concern you, but is it a rational basis test? Breyer In this case, I think it's a legitimate State interest narrowly tailored to meet that interest, Your Honor. Roberts But in the case of a date of birth for a driver's license, you say it's rational basis. Breyer Yes. Breyer So what are the, how do we decide? I'm a little interested, if you could spend two or three minutes, elaborating this. A number of laws, Federal laws, I imagine, regulations fill this room. And I think many, maybe more, maybe several rooms, and many of them involve asking people for information. And the number of forms that ask people for information, I guess, about themselves might fill several rooms. And I can imagine in a country of 300 million people, you would find someone objecting to many of the questions. And so how is the system supposed to work, in your view, where judges will decide whether a particular question – I'm not saying you're wrong. I just wanted to get an idea from you as to how this legal system works, where any question asked by the government about a person is potentially subject to challenge as unconstitutional. You and I will agree that many are fine, but you're worried about some that aren't fine. How does it work, the system, distinguishing the ones from the other? Phillips Well, this Court has done much of that already in a whole history of cases, contraception, procreation, marriage, sexual relations, family relations. Sotomayor The fundamental rights issue that the Sixth Amendment identified, are those the questions that are subject to that greater scrutiny? Phillips The rights that go – the questions that go to those types of – which could elicit that type of information. For instance, on the Form 42, if they said, tell us any adverse information you have about this person, which includes any other matters, this could be – they could respond with saying, well, I don't like the way he – how many kids he has. I don't like his religion. I don't like his sexual practices. Ginsburg But isn't that question, that kind of open-ended question, routinely used in employment situations? That is, the employer wants to know is there any adverse information about this person? Doesn't know which question to ask, because there's a whole many things that could be relevant. So are you suggesting that that kind of question is off-limits to the government, although it is routinely used in other employment sectors? Phillips It is not routinely used in employment sectors where there is allowed to inquiry into non-employment-related. Ginsburg Well, there has, alleged on the top, everything that we're asking you is meant to determine suitability for employment. So they want to find out information relevant to suitability for employment. Kennedy And for security clearances. Those are the two issues. Kennedy Well, I have to agree with the implication of Justice Ginsburg's remark, at least what I imply from it. Look at the private employment sphere. It seems to me that for sensitive position, a bank who has people taking care of its employees, taking care of other people's money or the medical profession, that the employer could be sued and would be remiss if it did not ask this question, do you know anything adverse about this person whom we're going to hire for a very sensitive position? This is done all the time. We do it, as the judge said below, with our law clerks. Phillips That would be exactly my point, Your Honor. It is that in those situations where there are sensitive issues, you are allowed to inquire based on the need. But here, they are allowed, they are inquiring the snack bar worker, the bus driver, the gift shop operator, are required to respond to these questions, the GS-4 interior department clerk. The government's position is all of those are subject to the same type of inquiry. Alito I don't see what the alternative as a practical matter is to asking this sort of open-ended question. The alternative would seem to be to try to compile a list of every possible thing that the person might do that would raise serious questions about suitability for employment or would be disqualifying for employment. And that seems to be impractical. There's almost no limit to the sorts of things that might be relevant in that respect. Isn't that right? This goes to the very basic question of why does the government need to know this information for these individuals, most of whom have been there for 20 to 30 years. The government can't show a single instance of any of these individuals doing anything that would require any of the type of scrutiny. Ginsburg Are you then saying that these people have to be grandfathered or grandparented because they worked for 20 years without? I am not, Your Honor. But the government has some burden to show a need to inquire into these privacy areas. It needs to know if you've gone to the Betty Board. Ginsburg But you're making a distinct use of it. These people have worked there for 20 years. Are they different from the new employee? Are you suggesting it's okay for the new employee, but not okay for the person who's already in the job? I am not. The difference between this case and ultimately what was allowed in both Whelan and Nixon, or excuse me, particularly in Whelan, is that there was some overarching societal need to have this information. Alito Suppose the person who works at the gift shop or the snack bar, I think that's what you mentioned, has a big sign on his front lawn that says, I hope the space shuttle blows up. Is that information the government has a legitimate reason to get? I would agree that in that instance, I hope the space shuttle blows up, would certainly implicate some First Amendment issues, but the government should know that information. Alito Now, what's the alternative to acquiring that information through an open-ended question? You have to have a specific question on the form. Does this individual have a big sign on his front lawn that says, I hope the space shuttle blows up? I wouldn't think that that would be needed. I think that's You see what I'm getting at. I don't see how you're going to do this other than by asking an open-ended question. Alito Only if you need to know the answers. And for the snack bar worker, for the GS clerk typist, for those types of people who have no access to sensitive information, do not, it can the definition here is that these are no or low, they are low-risk employees, which is defined as if they misuse their position, they will have little or no impact on the agency mission. So we know that these questions are being asked of people who, if they completely misuse their position, there will be no impact. Roberts I'd like to get back to Justice Breyer's question. So now you not only have to decide which questions, they can challenge any question they want and say this isn't pertinent, but you also have to categorize which employees are being asked that question. This is a SF means standard form, right? Alito It does. Roberts Well, you know, it's a big government and they can't tailor every inquiry, every form to the individual applicant. Alito It can to the positions. This, what is being done now, if they've done 70,000 inquiries, that means, and 128 issues arose, that means a whole host of people, over 69,000 people have had to give up information that otherwise they would not have to give up. Ginsburg Are you suggesting this is no good for government employment? You are dealing with a contractor here. But this form, as I understand it, has been used for many years for standard government employment. Is it, are they okay? And I'm for non-sensitive positions. Are you, are you arguing just government contractor or are you saying even for the government employee, the person who's hired to work at the snack bar in the Senate, let's say, the government can't ask these questions? Alito If I understand Your Honor's question, and I apologize, I think this cannot be asked, these questions cannot be asked of people for whom the government does not have a justifiable need to know that information. Scalia We can handle those details, my goodness, it's all right there in the Constitution. And we can decide what employees have to know what and what questions you can ask them and how much privacy is too much privacy, right? Well, the government claims to be acting as the employer here. In fact, it is not. It is once or twice removed. But assuming that the government is the employer, there is a massive amount of waste that is generated by this form. Ginsburg So you are attacking these forms for all of government employment, not just the contractors? Alito I don't. I think it would apply to all of those people who are in non-sensitive positions. This is the government's definition. It's not our definition. We chose the government's definition. And if it is a low-risk or no-risk employee, then the government doesn't have a need to know. A private employer is not a— Roberts You don't know if it's a low-risk employee until you find out what he or she is like or what the neighbor thinks. Well, you know, he keeps practicing planting bombs or something. I mean, then he becomes a high-risk employee. You don't know until you get the information. That's the reason you ask for it. In the context of these employees for this particular case, we absolutely know because the government went through, and of the 7,500 employees there, it categorized 97 percent as low- or no-risk employees. So we know in this context where they are already employed and it's just a badging procedure. What the government did here is that— Scalia Excuse me. I thought that your friend said that the badge enables you to get within 10 feet of the shuttle. I don't know that for a fact. I do know that what— Scalia Well, do you contradict that? And if it's so, how can you say that these people are low-risk employees? Because the government says they are low- or no-risk employees. This is a campus atmosphere. I've been there. I've seen it. If you want to — if I want to go on, I just call up Dr. Nelson and say, can you get me on. If I'm on there and I — my car breaks down and I call up and I say, can the triple-A auto come on, I just call the gate and the triple-A auto person and I say, yeah, just let them in. The people who have — bring supplies on, they just come on. This is a campus where they don't have— Scalia Does Al-Qaida know all of this stuff? I'm sorry. Scalia Does Al-Qaida know this? Scalia Well, the interesting response to that, Your Honor, is that it wouldn't matter if they knew this, because it's open, transparent science by a civilian agency in a campus atmosphere. This is not a — weapons, national security— Roberts What you're saying is that it may not make much sense to have the people here fill out Standard Form 85. But the government can't tailor its open — opening security form to people that, you know, maybe down the road at a different NASA laboratory, they do work on more sensitive information. It's a standard form. The government has to do things in a standard way. Scalia And the government has a form for those people who work in classified information. That's SF-85P, SF-85S, and SF-86. The government can standardize, and when it acts as the employer, it has an obligation, because it can't take both its ability and authority as the government and — and overreach into the private lives of its citizens. The questions that are being asked here would not be allowed for a private employer as well. Ginsburg I'm — I'm very surprised to hear that. I thought that — that there were in — in the private sector similar questions. Scalia Similar, but not questions that would go — you couldn't, as a private employer, say you have to turn over your medical records. You have to turn over— Ginsburg What does it say you have to turn over your medical records? Scalia That's in SF-85 page 6, which is the release. And all of this has to be inquired into as— Roberts Under what — under what law could you, as a private employer, not ask for those records? Scalia In the State of California, under the right to private— Roberts I know we're talking about under general Federal law. Scalia Most — general Federal law. I cannot answer that. Roberts But it's a matter of statutory. Scalia Yes. Well, in some States there's a — there's a private jury. Kennedy Question 42, do you have — pardon me, question 7 on form 42, the standard one. Do you have any adverse information about this person's employment, resident activities concerning, and so forth, violations of the law? Are you saying that private employers cannot ask that question? Scalia They can't ask the question— Kennedy Prospective private employer. Scalia — in the context of the release, which is SF-85 page 6, which requires that you release your private records, extensive records, residential, retail businesses, where you shop, your educational, your— Kennedy I'm asking whether or not a private employer can ask third persons the question that's at form 42, question 7. I thought your representation to me was that private employers cannot ask that question. Scalia If I said that, Your Honor, I misspoke. The question— Kennedy But that was enjoined by the court below, was it not? Scalia It was. Kennedy All right. Question 7 talks about financial integrity, mental or emotional stability, general behavior or conduct, or other matters. If a private employer in many States goes into non-employment-related issues, it's contrary to— Breyer What is your view on that question? You know, there's a famous funny example that supposedly may be untrue. Senator Ruski used to ask and say, in giving a reference, he would write about someone, you'll be lucky if you can get Smith to work for you. All right. That's the kind of thing that you might want to know. And despite the ambiguity there, it seemed to me that question 7 sort of drove at that. And so, but they did enjoin it. So in your view, is that aspect of the injunction wrong? Scalia No. Breyer All right, then. If it's right, why is it right? Because it seemed to me the basic thing any employer would want to know is whether I'm lucky to get this person to work for me, that kind of thing. Scalia Any employer can ask issues that are employment-related and based upon the nature of the job. You can ask those questions. But any employer can't require, as a condition of employment, that you sign a release that gives them all manner of information as to where you shop, how you shop. Breyer What is the specific thing about question 7 that you think is unlawful or should be changed? What words do you object to in that question? Scalia Well, other matters, general behavior or conduct, certainly. Breyer So they cannot ask, do you have any information about this person's employment, residence, or activities concerning general behavior or conduct or other matters? Now, I am an employer, and I'd like to find out if he's going to do a good job. So what am I supposed to say? There doesn't seem to be a place here other than that to get into that question. Scalia Well, that's because this question for the types of situations is not needed. The question that is needed is what are the characteristics that you feel he has for this job? What are the others? Scalia Why do you say a private employer could not ask a question of such detail? Why could not? Breyer Primarily because of the release, that's the sixth page of Standard Form 85. That release just allows the government to do it. Scalia Why could a private employer not do it? Breyer Because in virtually every State there are laws requiring the disclosure of private information. Scalia Well, you mean that legislatures take care of these matters. I find it curious that in order to establish a Federal constitutional right which turns this area over to this Court, you invoke laws that have been democratically enacted by State legislatures. I mean, if indeed that's the criterion, maybe you don't need us. Breyer The reason I invoke that is because the government has stated that any private attorney could ask these questions, and that's a misstatement of the law in most States. Alito May I ask you this question about the question on drug treatment? Would it be unconstitutional for the government to take the position that to require an employee or applicant for employment to disclose whether this individual had violated Federal or State drug laws, and take the position that if the person gave an affirmative answer, that was disqualifying? Would that be unconstitutional? Breyer If they said I violated State or Federal laws, not on its face, so long as if it said voluntarily, you may show mitigation that would show that this is not a problem that would make you unfit for the job. Alito May So they could say, have you bought, sold, used drugs in violation of Federal or State law? If so, you're disqualified, unless you can show that you have had treatment, and then it's up to you to disclose whether you had treatment. Breyer That's correct. Alito May What's really the difference between that regime and this regime that you have here? Breyer The difference is here is because it's compelled. It's a compelled disclosure, and not offering you the opportunity to make a showing. And in this concept, the appeal right that you have from this is not a robust appeal right that was described. It's a very limited appeal that's internal to the department, that does not have a right to confront or cross-examine. Ginsburg Can I ask you to clarify your understanding of what has been enjoined? We know it's easy, but form 85. But form 42, you mentioned the releases. I thought that the Ninth Circuit's order covers parts of question 7 and perhaps question 8. I didn't see – is there something, maybe I missed it, that says they can't ask for release of the records? Breyer There was in the emergency order a specific reference to the release. There was not in the final order, but the order – the question has to be read in the If you go to the Betty Ford – Ginsburg No, but they didn't say, Government, you can't ask for the release. Breyer They did not. Ginsburg They said you can't ask open-ended questions. Breyer That's correct. They did not say that, but it has to be implicit in their ruling, because in many of the cases – Ginsburg Well, if somebody is going to be enjoined, I mean, it can't be implicit in the ruling. If you're enjoined, because it's been stayed, you don't have a formal order. But you can't say, well, it's implicit in a how-many-page opinion. Breyer Well, in the court below, for instance, the argument that the government made was that they needed to have the medical records, not that they just needed this information, that they needed to have the medical records. The question that logically flows is what can they do with this information once they learn that you had counseling? Then I guess they can ask you who the counselor was, what you told the counselor, what was the purpose of it. Ginsburg Just, as I understand this process, this is not an oral interview. It's not you fill out a form, you meet somebody, and they ask follow-up questions. This is handled on the papers, right? Breyer It's handled – first, you reveal the information, and there are 22 approvers at JPL, civilians who are not employed by NASA. They review it, then it goes to NASA, and then there's a whole set of people. Ginsburg Yeah, but is there an oral interview in this process? Breyer There is not. Ginsburg So then they wouldn't say, oh, it says here, so I'm going to ask this, that, and the other thing, because it's a written feature. Breyer I may have misspoken. It doesn't preclude an oral interview. I am not aware of oral interviews having been made or taken. Kennedy You say there are 22 people at JPL that are involved in the employment? Breyer There are 22. The government has approved 22 so-called approvers who are at JPL who look over – who are eligible to look over these forms and the responses to the forms. Roberts What do you understand the scope of the preliminary injunction to be? Does it bar the solicitation of this information throughout the Ninth Circuit or only with respect to JPL? Breyer At this point, it only applies to – well, this is not before part of the record, but when it went back to the district court, the district court and all parties agreed that it would only apply – HSPD 12 would be limited to these 28 individuals, that investigation. Roberts Thank you. Thank you, counsel. General Katyal, you have 4 minutes. Katyal Justice Ginsburg, you had asked earlier whether this was a narrow decision on just a couple of questions, and I think that the argument that you just heard from my friend illustrates that it's not. He asked for a, quote, free standing right to control information. Ginsburg But whatever he asked, we were reviewing a judgment. Katyal Right. And the judgment is not the universe. It's certain questions can't be asked. Katyal And the judgment is based on the following rationale. This is from the Petition Appendix at page 18A from the Ninth Circuit. Quote, If the government's actions compel disclosure of private information, it has the burden of showing that its use of the information would advance a legitimate State interest and that its actions are narrowly tailored to meet the legitimate interest. Now, that reasoning was used to invalidate a question, as Justice Kennedy said, on Form 42, that employers ask all the time, banks ask it and the like. And it's a – and it's used to invalidate parts of a standard form that the government uses day in and day out and that employers generally use in order to make employment decisions. Sotomayor Are you conceding you can't meet that standard, or are you saying that the Ninth Circuit misapplied that standard? Katyal No, we're not conceding that at all. I do think we would meet the standard, but our point is, it's the same point as in Enquist, in the Chief Justice's opinion in Enquist v. Oregon, just forcing the government to have to march into court every time and justify a question here or an employee there or a soup clerk here or whatever. All of those different inquiries pose practical burdens on the ability of the government to operate. And so the – Sotomayor Do you think there's something wrong with the government having to explain why it seeks information? I mean, I would think that would be fairly simple in virtually every situation. Katyal I think Sotomayor I ask that question because. That begs the question of, can you ask anything you want, regardless of why? Katyal I think the political process ensures that the government generally has to ask that – has to answer that question writ large. But in order to, for the Ninth Circuit's reasoning to apply, it would permit any individual person here or there to ask the question. Ginsburg I don't see how that's so, because at least if you're in the Ninth Circuit, you know that the Ninth Circuit has blessed all the questions on that form but one. Katyal Well, that's only because. Ginsburg I mean, you could raise the question, but you'd be out of court in a minute. Katyal Justice Ginsburg, I think that's only because the challenger, the Petitioners here only challenged certain questions. Now, we could imagine other Petitioners challenging other questions. Ginsburg I thought they did in the lower court, but abandoned it here, challenge the question about drug use. Katyal The drug use piece, but I could imagine all sorts of inquiries about other aspects of the form. And indeed, the rationale, the language that I just read to you is a road map for anyone to be able to come in and say, well, this question isn't necessary for me, because I got a background clearance before, I'm rehired, or whatever, and it would be a huge practical burden in the same way as recognizing the cause of action in Inquist was a practical burden. Instead, we think what the Court should do here is what it did in Wayland, which is recognize governments collect information all the time. Alito How much of the information that's at issue here can be released and to whom? Katyal The information that can be collected, that's released here, is governed by the Privacy Act, and so there are the appendix to our brief lists out precisely to whom they could be released to. That's been around since 1975. We've seen virtually no complaints about the government disclosing this type of background information. Ginsburg Is that also within the government itself? I know the Privacy Act says government can't disclose, but how about checks? I mean, we have a vast government. Checks about circulating the information within the government. Katyal If it is for a purpose to further the government purpose for which the information was collected, it can be distributed to other folks in the government. There are restrictions on that, so, and they're specified in the Privacy Act and they're quite extensive. And to the extent the Court is concerned that there's something that isn't robust enough in the Privacy Act, we suggest that that could wait for an as-applied challenge down the road when information is disclosed. We don't think it will, but if, heaven forbid, that happens, that's the basis for an as-applied challenge down the road. But here what they're asking you to do is invalidate questions and forms that the Thank you. Roberts Thank you, General. The case is submitted.